IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Ella Mae Jones and Albertina Jones, ) ) ) Plaintiffs, ) ) vs. ) ) ) ) Vanderbilt Mortgage & Finance, Inc., Clayton Homes, Inc., and American Bankers Insurance Co. of Florida, ) ) ) ) ) ) Defendants. ) | **COMPLAINT** <br><br> **(Jury Trial Requested)** |

Plaintiffs, complaining of the Defendants above-named, would show this Court as follows:

## JURISDICTION

1. Plaintiffs are citizens and residents of the County of Lexington, State of South Carolina.

2. Defendant Clayton Homes, Inc., ("CMH") is a corporation organized under the laws of a State other than South Carolina, but transacting substantial business and owning property in the State of South Carolina.

3. Defendant Vanderbilt Mortgage & Finance, Inc. ("Vanderbilt") is a corporation organized under the laws of a State other than South Carolina, but transacting substantial business in the South Carolina; upon information and

belief, Defendant Vanderbilt is the affiliated finance company of Defendant CMH.

4. Defendant American Bankers Insurance Company of Florida ("ABIC") is a corporation organized under the laws of a State other than South Carolina, but authorized to transact insurance business in South Carolina, and transacting same in South Carolina.

5. This Court has jurisdiction over the parties and subject matter of this action based on the diversity between the Plaintiffs and Defendants, and sum value of the amount in controversy. 28 USC §1332.

## FACTUAL ALLEGATIONS

6. At all times herein mentioned, Plaintiff Albertina Jones is/was the owner of real property located in Lexington County, South Carolina, consisting of approximately 1.75 acres, which real property she inherited from her grandmother.

7. Defendant CMH is a seller of manufactured homes which participates as seller in the financing of mobile homes in credit sale transactions, some of which are secured by the mobile homes and some of which are secured by a mortgage on real estate in addition to or in lieu of a security interest in the mobile home.

8. Defendant Vanderbilt is a financial services company specializing in the acquisition, servicing and resolution of mortgage transactions as well as a lender in credit sales transactions where the transaction is secured by mobile homes used or to be used as the debtor's dwelling.

9. Defendant ABIC is an insurance company which, upon information and belief, sells insurance products and other products, including service or extended warranty contracts such as its "Home Buyers Protection Plan," in connection with the sale of mobile homes.

## PARTIES' INITIAL TRANSACTION

10. In or around September of 2005, Plaintiffs entered into a Retail Installment Contract – Security Agreement with Defendants CMH and Vanderbilt, for the purchase and financing of a CMH "Tradition" manufactured home; the contract purported to grant said Defendants a secured interest in both the manufactured home and Plaintiff Albertina Jones's real property.

11. The sale price of the manufactured home was $72,600.00; however, the contract contained an additional $11,200.00 in fees and expenses charged to Plaintiffs; among these charges was the sum of $2,865.00 payable to Defendant ABIC for three years of property insurance and another $580.00 for a "Home Buyers Protection Plan." The insurance was arranged, upon information and belief, by HomeFirst Agency, Inc., which is a wholly-owned subsidiary of Defendant CMH.

12. The Retail Installment Sales Contract stated that the "Seller may retain or receive a portion of" the above charges, as well as a portion of every other charge listed on the contract. Including in the fees "split" with seller was an attorney fee of $700.00.

13. The total purchase price, including the additional charges was $83,235.00, which Defendant Vanderbilt financed at a rate of 9.00% interest. Plaintiffs

began making biweekly payments in the amount of $349.34 beginning on November 11, 2005.

14. Upon information and belief, Plaintiffs thereafter attended a real estate closing in the offices of an attorney selected by Defendants; at the closing, in order to obtain a secured interest in the Plaintiff's land, the above transaction was "refinanced" and a mortgage in favor of Defendant Vanderbilt resulted; upon information and belief, Plaintiffs preference as to closing attorney or insurance provider were not ascertained prior to closing as required by South Carolina law.

15. Despite payment by Plaintiffs and its promise to timely deliver of the manufactured home, Defendant CMH failed or refused to deliver and setup the manufactured home for more than seven (7) months thereafter, during which time Plaintiffs were forced to cover the costs of other housing.

## DESTRUCTION OF PLAINTIFFS' HOME

16. Plaintiffs finally moved into their new home in or around March of 2006. Almost immediately upon doing so, Plaintiffs noticed significant problems with the HVAC unit installed by Defendant CMH and/or its agents. Specifically, the air conditioning unit would cease functioning, although the fan would continue to blow uncooled air into the home. Upon information and belief, this problem was caused by faulty wiring, which caused the air conditioner to trip the circuit breaker.

17. Plaintiffs repeatedly brought this problem to Defendant CMH's attention, and CMH sent employees to service and repair the HVAC unit and/or wiring on

multiple occasions. On each occasion, Defendant represented that the problem had been corrected; however, the problem continued to manifest itself. Upon information and belief, Defendant's last attempt to correct the problem was on or about June 10, 2006; Defendant failed to return thereafter.

18. On or about July 10, 2006, Plaintiff Ella Mae Jones awoke at approximately 1:00 a.m., and noticed that smoke was coming through the floor register; the smoke thickened and it became apparent that the home was on fire; Plaintiff woke her grandchildren who were sleeping in the home and evacuated them to the outside; shortly thereafter, the home became engulfed in fire and was completely destroyed. The cause and origin of the above fire was thereafter determined to be the HVAC system about which Plaintiffs had complained to Defendant repeatedly.

## SUBSEQUENT EVENTS

19. Following the destruction of their home, Plaintiffs made a claim on the insurance policy via Defendant ABIC. Upon information and belief, Defendant ABIC tendered the sum of $72,600.00 to Defendant Vanderbilt; however, upon information and belief Defendant ABIC has failed to pay adequate amounts for other covered losses under the policy.

20. Additionally, the policy was misleading when sold, in that it purported in one section to cover the full amount of the debt to Defendant Vanderbilt but, elsewhere, by endorsement, removed said coverage; moreover, the debris removal coverage was limited to $50.00 under the policy which is manifestly

inadequate to remove a manufactured home from property under any scenario.

21. As set forth above, Plaintiffs' preference as to the provider of the insurance was never ascertained in the course of the initial transaction; upon information and belief, Plaintiffs could have purchased more favorable and comprehensive coverage at a better rate, but were deprived of that opportunity by Defendants CMH and Vanderbilt who, upon information and belief, received a portion of the charges made for insurance.

22. Additionally, despite the fact that Plaintiffs purchased three years' of coverage with their initial payment, and the fact that the property insured was destroyed within the first year, Defendant ABIC has failed to refund the unused premiums to the Plaintiffs.

23. Following the destruction of the home, Defendant Vanderbilt, despite being on express notice of the fact that Plaintiffs were without a home, and despite receipt of payment from ABIC, failed to re-amortize any sum due on the original contract and/or mortgage, engaged in aggressive collection practices, and demanded that Plaintiffs continue to make their normal monthly payments, and now threaten Plaintiffs with foreclosure.

## FOR A FIRST CAUSE OF ACTION

### (Violation of Attorney and Insurance Preference Statute)

24. The above paragraphs of the complaint are realleged as if set out here in full.

25. Defendant Vanderbilt, in addition to comitting the various acts set forth hereinabove, is subject to all claims and defenses which the Plaintiffs may assert against the seller, CMH, by virtue of Vanderbilt's acceptance of the assignment of the Retail Installment Contract referenced hereinabove.

26. Upon information and belief, the Defendants failed to properly ascertain the preference of the Plaintiffs as to legal counsel employed to represent Plaintiffs in all matters relating to the closing of the transaction; nor did Defendants properly ascertain the Plaintiffs preference as to a homeonwers insurance provider, all as required by Section 37-10-102 of the South Carolina Consumer Protection Code.

27. Upon information and belief, the violation of the South Carolina Consumer Protection Code by Defendants entitles Plaintiffs to not less than one thousand five hundred ($1,500.00) dollars and not more than seven thousand five hundred ($7,500.00) dollars per debtor, attorney fees, and if the Court determines unconscionable conduct, the amount of the loan, award of all finance charges, twice the interest paid on the mortgage, and forgiveness of all interest due on the mortgage pursuant to S.C. Code Section 37-10-105 (amendment enacted June 15, 1997).

## FOR A SECOND CAUSE OF ACTION
### (Negligence)

28. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to the extent not inconsistent with the allegations of this cause of action.

29. Defendant CMH owed Plaintiffs a duty to exercise due care in the setup, servicing and repair of Plaintiffs' home.

30. The Defendant breached its duty to Plaintiffs in the above particulars, and in such other particulars as may be shown at trial.

31. Defendants' breach was in conscious, reckless disregard of the rights of the Plaintiffs, and in fact jeopardized Plaintiffs' lives and the lives of children in the home.

32. As a direct and proximate result of the aforesaid negligent, careless, reckless, willful and wanton acts and omissions of the Defendants, Plaintiffs have suffered actual damages which they are entitled to recover by way of judgment against Defendant; additionally Plaintiffs are entitled to recover, and specifically request, punitive damages.

## FOR A THIRD CAUSE OF ACTION
### (Breach of Warranty / Implied Warranty of Merchantability)

33. The allegations contained hereinabove are repeated as if fully alleged herein verbatim.

34. In selling Plaintiffs' home, Defendant expressly and impliedly warranted that the home would be free from defects in design, manufacture, material, and workmanship and further warranted that same was merchantable and reasonably fit for purpose for which it was intended to be used.

35. The home was not merchantable nor free from defects in material and workmanship.

36. As a direct and proximate result of Defendant's breach of its express and

implied warranties of marchantability, Plaintiffs have suffered damages for which Plaintiffs are entitled to judgment for actual and punitive damages, as well as costs and attorney's fees.

### FOR A FOURTH CAUSE OF ACTION

### (Revocation of Acceptance)

37. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to the extent not inconsistent with the allegations of this cause of action.

38. Plaintiffs provided Defendants adequate opportunity to cure the defects in subject manufactured home.

39. At the time Plaintiffs took delivery of and accepted the subject manufactured home, Plaintiffs did not know of said defects and the acceptance of the home was reasonably induced by the difficulty of discovery of defects and by repeated representations and assurances of quality by Defendants, and reasonable representations that defects in the vehicle would be cured.

40. These defects substantially impair the value of the home and, in fact, lead directly to the destruction of the home.

41. Within a reasonable time after discovery of said defects, Plaintiffs notified Defendants of the intention of Plaintiffs to revoke acceptance of the home in accordance with Section 36-2-608, <u>South Carolina Code of Laws;</u> alternatively, Plaintiffs would show that Defendants were on actual and constructive notice of the defects and Plaintiffs concern and

dissatisfaction.

42. Notwithstanding notice of revocation and acknowledgment thereof, Defendants failed and refused and to tender the previous payments and to repurchase the home.

43. Based upon the foregoing, Plaintiffs cancel the contract of sale and elect to recover so much of the price as has been paid pursuant to Section 36-2-711, South Carolina Code of Laws.

44. Plaintiffs further request an award of prejudgment interest and both incidental and consequential damages as provided by Section 36-2-715, South Carolina Code of Laws.

## FOR A FIFTH CAUSE OF ACTION

### (Bad Faith Failure to Pay Insurance Benefits)

45. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to the extent not inconsistent with this cause of action.

46. Defendant ABIC, knowing that the claim of Plaintiffs is wholly valid and should be paid, wrongfully and in breach of implied covenant of good faith and fair dealing withheld and denied certain benefits due Plaintiffs, and/or failed to inform Plaintiffs about benefits to which they were otherwise entitled.

47. In denying the claim of the Plaintiffs for benefits, Defendants acted wrongfully and unreasonably.

48. Defendant refused and continues to refuse to pay the full and just claim of Plaintiffs, despite knowledge demonstrating the liability of Defendant for

the claim. Additionally, Defendant continues to retain unearned premiums.

49. As a direct and proximate result of the conduct fo Defendants, Plaintiffs suffered substantial compensable losses, including benefits withheld and economic losses such as attorney's fees, loss of interest on money that had to be paid to make up the benefits that the Defendants should have paid, and suffered embarrassment, humiliation, and severe mental and emotional distress and discomfort.

50. Judgment should be granted to Plaintiffs for actual, statutory, and punitive damages together with attorneys' fees and costs, in an amount to be determined by the trier of fact.

## FOR A SIXTH CAUSE OF ACTION

### (Conversion)

51. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to the extent not inconsistent with this cause of action.

52. The aforementioned actions of Defendants, including overcharges and fee-splitting as set forth above, as well as the wrongful retention of unearned insurance premiums, constitute conversion of the property of the Plaintiffs.

53. As a proximate result of the unlawful conversion of property by Defendants, injuries have been inflicted upon Plaintiffs that may be recovered by way of judgment against Defendants, for a sum in excess of the value of all property converted, plus interest, other consequential damages, punitive damages, costs and attorney's fees.

## FOR A SEVENTH CAUSE OF ACTION

### (Unfair Trade Practices)

54. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to the extent not inconsistent with this cause of action.

55. The activities of the Defendants constitute "trade or commerce" as defined by South Carolina Code Section 39-5-10, et.seq., (as amended).

56. The actions of the Defendants, above-described, constitute unfair and deceptive acts and practices in the conduct of trade and commerce, as prohibited by the South Carolina Unfair Trade Practices Act, 39-5-10 et.seq., and are willful violations thereof. Additionally, Plaintiffs would show that the Defendants committed prohibited acts by virtue of the following practices, and such others as may be shown at trial:

   a. Selling its "Home Buyers Protection Plan" service contract without complying with the S.C. Service Contracts Act, S.C. Code Ann. § 38-78-10 et seq.;

   b. Engaging in a pattern and practice of kickbacks and unauthorized fees, including the splitting of attorney's fees, in violation of 12 U.S.C. § 2607 and South Carolina law;

   c. In the case of Defendant CMH, acting as a mortgage broker by steering Plaintiffs to Defendant Vanderbilt, for gain, despite the fact that Defendant CMH did not comply with the requirements and restrictions placed on mortgager brokers under South Carolina law. S.C. Code §40-58-10, et. seq.

57. The actions of the Defendants have a real and substantial potential for repetition and affect the public interest.

58. The Plaintiffs has suffered an ascertainable loss due to the unlawful actions of the Defendants, entitling Plaintiffs to recover actual damages in an amount to be proven at trial, treble said actual damages, and an award of attorney's fees and costs.

WHEREFORE, Plaintiffs pray for judgment in an amount sufficient to compensate Plaintiffs' actual damages, together with punitive damages, statutory damages, such interest as is allowable by law, costs, attorney's fees, and such other relief as is just and proper.

TROTTER & MAXFIELD, ATTORNEYS

By: _____
Dave Maxfield, Esquire # 6293
1701 Richland Street
Columbia, South Carolina
(803) 799-6000

DATED: March 20, 2007

Columbia, South Carolina